UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JORDAN WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 2045 |
| v. | ) | |
| | ) | Judge Dow |
| UNITED STATES OF AMERICA and | ) | |
| DR. BRIJ MOHAN, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**Introduction**

Jordan Watkins is a federal inmate asserting one count against the United States under the

Federal Tort Claims Act, 28 U.S.C. § 1346(b), and four counts against named and unnamed BOP

employees, pursuant to the Supreme Court's holding in *Bivens v. Six Unknown Named Agents of*

*Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Watkins' FTCA claim should be dismissed

because it is untimely. Watkins had six months to file an FTCA case in federal court after his

underlying administrative claim was denied on July 20, 2020, but this lawsuit wasn't filed until

April 15, 2021 — nearly three months too late. In addition, Watkins's *Bivens* claims fail because

*Congress* (and not the Judiciary) is the law-making body best positioned to fashion a remedy for

the types of injuries Watkins alleges in his complaint. As the Supreme Court's recent holding in

*Egbert v. Boule*, 142 S. Ct. 1793 (2022), makes clear, courts should refrain from creating a cause

of action against government employees in areas where Congress has already created a remedial

process that it finds sufficient to secure an adequate level of deterrence. *Id*. at 1807. Watkins's

complaint invites this court to do just that. This court should decline the invitation.

**Background**

Jordan Watkins was a pretrial detainee at the MCC on June 12, 2019, when he underwent an operation to repair a hernia. Dkt. 22 at ¶ 1. Watkins alleges that following the surgery, he experienced severe pain and swelling in his groin. *Id.* According to Watkins, this condition persisted through the date of his sentencing on July 18, 2019 (at which point he became a prisoner rather than a pretrial detainee), and through the remainder of his time at the MCC. *Id.* at ¶ 5. Watkins was moved from the MCC on July 29, 2019, to Stateville Correctional Center, a state facility under the control of the Illinois Department of Corrections. *Id.* at ¶ 20. From Stateville, Watkins was moved to another Illinois facility, Livingston County Jail, on August 15, 2019. *Id.* Watkins returned to federal custody on August 27, 2019. *Id.*[1]

Watkins's second amended complaint identifies Dr. Brij Mohan, a physician affiliated with the MCC, as a defendant who failed to address Watkins's serious medical needs during the time that Watkins was incarcerated at the MCC. *Id.* at ¶¶ 6-7. In particular, Watkins alleges that Dr. Mohan "refused to change [his] medical treatment plan at MCC, by, among other things, prescribing more or different pain medication, providing requested medical evaluations and care, or by helping to arrange a follow-up visit with the physicians at Thorek Memorial Hospital" who performed the initial hernia surgery. *Id.* at ¶ 50. Watkins also alleges that Dr. Mohan cleared Watkins for release from the MCC despite Watkins's serious medical condition. *Id.* at ¶ 52.

In addition to Dr. Mohan, the second amended complaint also lists unidentified "Jane Does and John Does" who worked at MCC, either as medical professionals under the direction of Dr.

---

[1] Watkins's complaint is not clear on where he returned once he re-entered federal custody. *Compare* ¶ 20 (noting that Watkins has been detained at FCI Gilmer from August 27, 2019, to the present); *with* ¶ 2 (noting that Watkins's alleged injury "lasted until he was ultimately transferred to USP Leavenworth on or about August 26, 2019.").

Mohan, or as non-medical corrections officials. *Id.* at ¶¶ 8-11. Watkins alleges that these unidentified defendants are also liable for the same conduct and omissions attributed to Dr. Mohan. *See, e.g., id.* at ¶¶ 64-65; 77-78.

Watkins presented an administrative claim for damages to the BOP that was received on October 29, 2019, and that claim was denied by the BOP on July 20, 2020. *See* Ex. 1 (SF-95 and BOP letter denying claim).[2] Watkins then filed a suit in federal court on August 7, 2020, *Watkins v. Mohan*, No. 20 C. 4662 (Aug. 7, 2020). That suit was eventually dismissed without prejudice on December 21, 2020, for failure to comply with a court order relating to Watkins's application to proceed in forma pauperis. *Id.* at Dkt. 12. Watkins filed the current suit, No. 21 C 2045, on April 15, 2021.

## Argument

Watkins's amended complaint contains one count of negligence under the Federal Tort Claims Act and four *Bivens* counts[3] for alleged constitutional violations — one 14th Amendment (pretrial) and one 8th Amendment (prisoner) count against Dr. Mohan and the other unnamed "medical defendants" at the MCC; and one 14th Amendment (pretrial) and one 8th Amendment (prisoner) count against unnamed MCC "corrections defendants." All five of these counts should be dismissed because Watkins's FTCA claim is barred by the applicable statute of limitations, and

---

[2] "In deciding a motion to dismiss for failure to state a claim, [courts] may consider documents attached to or referenced in the pleading if they are central to the claim." *Citadel Group Ltd. V. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 591-92 (7th Cir. 2012).

[3] The amended complaint labels each of these four counts as "42 U.S.C. § 1983 (Bivens Claim)," but § 1983 applies only to *state* actors and is thus inapplicable to this case. Each of the counts plaintiff intends to assert here against individual defendants is properly considered as *only* a *Bivens* claim — not a claim under § 1983. *See West v. Atkins*, 487 U.S. 42 (1988) (holding that a § 1983 claim requires that the defendant must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law"); *Ashcroft v. Iqbal*, 556 U.S. 662 at 675–76 (2009) (stating that a *Bivens* action is the "federal analog" to suits brought against state officials under § 1983).

his *Bivens* counts raise important concerns about creating a cause of action for damages against individual defendants — concerns that Congress is better equipped to address than the courts.

## I. The FTCA Claim in Plaintiff's Complaint Is Untimely.

Watkins's FTCA claim is untimely for the simple reason that he filed his complaint more than six months after the denial of his administrative claim on July 20, 2020. The FTCA is the "exclusive" jurisdictional basis for a common law tort claim against the United States. 28 U.S.C. §§ 1346(b), 2679(b)(1); *Duffy v. United States*, 966 F.2d 307, 313 (7th Cir. 1992). As a waiver of the United States' sovereign immunity, the FTCA's procedural requirements must be strictly followed in order to ensure that untimely filed suits do not "infringe on the government's baseline immunity from lawsuits brought against it by private parties." *Jackson v. Kotter*, 541 F.3d 688, 694 (7th Cir. 2008).

The statute of limitations for tort actions against the United States is set forth in 28 U.S.C. § 2401(b), which provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

This statute establishes *two* separate timing requirements for any suit brought under the FTCA, *both* of which must be met in order for the suit to be considered timely. *Unique Insurance Co. v. Linear*, No. 07 C 3658, 2007 WL 2973850 (N.D. Ill. Oct. 10, 2007) (citing cases). First, a plaintiff must present his administrative claim to the applicable federal agency within two years of when the claim accrues. Second, if the plaintiff chooses to file suit in federal court, he must do so within six months following the denial of the claim by the agency. Here, Watkins met the first requirement, but he did not meet the second.

4

Watkins alleges that his injury took place between June 12, 2019, the date of his hernia surgery; and August 26, 2019, the date that Watkins was transferred to either USP Leavenworth or FCI Gilmer. Dkt. 22 at ¶¶ 2, 20. Watkins presented his administrative claim to the BOP on October 22, 2019, and it was received on October 29, 2019, within the two-year window allowed by § 2401(b). Ex. 1 at 1. Once that claim was denied on July 20, 2020, Watkins then filed this suit on April 15, 2021 — eight months and 26 days after the denial of his administrative claim.

Courts regularly dismiss FTCA suits in cases where plaintiffs file even just slightly more than six months after the denial of their administrative claim. *See, e.g., Ransom v. United States*, 668 Fed. App'x 169, 171 (7th Cir. 2016) (affirming grant of motion to dismiss where plaintiff filed FTCA lawsuit five days after statute of limitations period expired); *Pekin Ins. Co. v. United States*, No. 19 C 1250, 2020 WL 207748 (N.D. Ill. Jan. 14, 2020) (plaintiff missed six-month window by 24 days); *Goldblatt v. Nat'l Credit Union Admin.*, 502 Fed. App'x 53, 55 (2d Cir. 2012) (20 days); *Unique Ins. Co.*, 2007 WL 2973850 at *2 (one month, 26 days). Here, Watkins missed his filing deadline by nearly *three months* — well beyond any length of time that could be attributed to mere inadvertence or mistake (even assuming such an excuse could toll the statute of limitations, which it cannot).

To be sure, Watkins may point out that his previously dismissed lawsuit — *Watkins v. Mohan*, No. 20 C. 4662 (Aug. 7, 2020) — was filed within the six-month window allowed by § 2401(b). This is true. But it does not change the fact that *the current lawsuit* was filed out of time. Watkins *had* a timely filed lawsuit, but that case was dismissed. Now that the prior case is over, Watkins cannot create a *new* six-month filing window for this current case based on the date his previous case was filed. *Cf. McNeil v. United States*, 964 F.2d 964, 648-49 (7th Cir. 1992) ("Unless McNeil began a fresh suit within six months [of the denial of his administrative remedy],

he loses."); *Jackson v. Kotter*, 541 F.3d 688, 694 (7th Cir. 2008) (noting that the FTCA "clearly prohibits actions 'begun' after the statute of limitations period"); *Luckett v. Rent-A-Center, Inc.*, 53 F.3d 871, 872-73 (7th Cir. 1995) (holding that a new case does not "relate back" to a previously dismissed action for purposes of tolling the statute of limitations); Tuke v. United States, 76 F.3d 155, 156 (7thCir. 1996) (noting that dismissal "'without prejudice' does not mean 'without consequence.' If the case is dismissed and filed anew, the fresh suit must satisfy the statute of limitations."). The FTCA claim is time-barred and should be dismissed.

## II. Congress Is Better Positioned than the Courts to Create a Damages Remedy Against Individual Defendants Like Those Named in Plaintiff's Complaint.

The remaining claims in Watkins's complaint are brought pursuant to the Supreme Court's holding in *Bivens*[4] — but Watkins cannot maintain these claims because *Congress*, and not the courts, is the proper entity with the power to create a cause of action in this circumstance. Unlike a claim under 42 U.S.C. § 1983, which statutorily authorizes a private right of action for damages for constitutional violations committed by officials acting under color of state law, a *Bivens* action is a judicially created remedy against federal officials for certain constitutional violations. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), the

---

[4] In addition to Dr. Mohan, Watkins asserts *Bivens* claims against an indeterminate number of Jane and John Doe individual defendants. These defendants are fictitious and should be disregarded. This motion is not brought on behalf of fictitious defendants whom the United States Attorney does not represent. In any event, as the Seventh Circuit recently held in *Herra v. Cleaveland*, 8 F.4th 493 (7th Cir. 2021), any future amendment to the complaint that might name *real* defendants instead of John or Jane Does would not relate back to an earlier timely-filed complaint. *Herra*, 8 F.4th at 498 ("We hold that naming a John Doe defendant does not constitute a 'mistake' within the meaning of Rule 15(c)(1)(C)(ii)."). Watkins had two years from the time of his alleged injury to identify and name real defendants in a pleading. But at this stage, it has been nearly three years since the events described in the complaint, and the two-year statute of limitations has lapsed for suing any real individual defendants other than Dr. Mohan. *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996), citing 735 ILCS 5/13-202; *Gomez v. Randle*, 680 F.3d 859, 864 n.1 ("Accordingly, once the statute of limitations period expires, [plaintiff] cannot amend his complaint to substitute a new party in the place of 'John Doe.'").

Supreme Court "recognized for the first time an implied private right of action for damages against federal officers," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), based on a claimed Fourth Amendment violation committed by federal agents who allegedly entered and searched the plaintiff's apartment and then arrested him without a warrant. *Bivens*, 403 U.S. at 389, 397. Since that case was decided, however, the Supreme Court has extended the *Bivens* remedy only twice. *Davis v. Passman*, 442 U.S. 228 (1979) (holding that an administrative assistant fired by a congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim); *Carlson v. Green*, 446 U.S. 14 (1980) (holding that a prisoner's estate had a *Bivens* remedy against federal jailers for deliberate indifference to necessary medical care where they failed to provide an inhaler for a serious asthma condition resulting in his death). Indeed, the Supreme Court has not expanded *Bivens* to any new contexts in over forty years. *Abbasi*, 137 S. Ct. at 1856–57; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. . . . [W]e have abandoned that power to invent 'implications.'"). The Supreme Court "has reversed more than a dozen appellate decisions" extending *Bivens* in the last four decades — making clear that expanding *Bivens* is now a "disfavored" judicial activity. *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (*en banc*); *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

The Court in *Abbasi* instructed that the first consideration in evaluating any *Bivens* claim is whether the claim arises in a new context as compared to *Bivens*, *Davis*, or *Carlson*. *Id.* at 1859-60. Second, following the "new context" analysis, a court should assess whether there are any "special factors" counseling hesitation before extending *Bivens*. *Id.* This two-step analysis was

7

truncated, though, in the Supreme Court's most recent *Bivens* case, *Egbert v. Boule*, 142 S. Ct. 1793 (2022). In *Egbert*, the Court reframed the two-part test. While acknowledging that earlier precedents "describe two steps," the Court noted that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803. The *Egbert* court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a *Bivens* remedy." *Id.* In so holding, the Court suggested that a rational reason to defer to Congress will be present "in most every case." *Id.*; s*ee also id.* at 1811 (Sotomayor, J., concurring in part) (noting that *Egbert* "rewrites a legal standard" for analyzing *Bivens* cases under a "newly announced test.").

### A.   The Existence of Alternative Remedial Structures Counsels Against Creating a Damages Remedy in This Case.

The first and primary reason to conclude that Congress is better equipped than the courts to create a damages remedy in cases like this one stems from the reality that Congress has *already* created multiple remedial structures to address precisely the kinds of injuries alleged in Watkins's complaint. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.

The first remedial structure counseling against creation of a damages remedy here is the BOP's Administrative Remedy Program (ARP), 28 C.F.R. § 542.10 (explaining that the ARP provides "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement."). Watkins availed himself of the ARP in this case by submitting a request for administrative remedy and appealing it through all the available channels before filing suit. Dkt. 22 at ¶¶ 35-40. As the Supreme Court noted in *Malesko*, the ARP is a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Malesko*, 534 U.S. at 74. Following the Court's reasoning in

*Egbert*, this alternative remedy *alone* is "reason enough to 'limit the power of the Judiciary to infer a new *Bivens* action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858); i*d*. at 1807 ("And, again, the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts."); *see also Abbasi*, 137 S. Ct. at 1862 (noting that the ability to pursue injunctive relief for abuses in the prison setting is a special factor counseling hesitation in recognizing a *Bivens* cause of action).

While the ARP can provide injunctive relief to inmates, it does not provide a damages remedy. Of course, the alternative remedial structures analysis does not *require* the existence of a damages remedy, but even if it did — Watkins has a second means of redress available in the form of the FTCA. The FTCA provides an "avenue for some redress," such that "bedrock principles of separation of powers" foreclose creating a new constitutional remedy by judicial implication. *Malesko*, 534 U.S. at 69 (citation omitted); *see Wilkie*, 551 U.S. at 552 (describing that the key is the presence of "some process" that allows the plaintiff "to defend and make good on his position"). Watkins, for his part, sought significant monetary damages in the FTCA administrative claim that he presented to the BOP before filing suit. Ex. 1 at 1. Here, there is no question that Watkins potentially had both the ARP and the FTCA remedies available to him — because his complaint explicitly states that he has sought to avail himself of both.

Between the ARP, injunctive relief, and the FTCA, inmates in Watkins's position have multiple alternative processes to protect their interest in obtaining adequate medical care. But more importantly, it is the *availability* of these alternative processes — not whether they were actually utilized or how effective the relief is — that matters for purposes of deferring to Congress. *Wilkie*, 551 U.S. at 552 (an alternative process need only provide a plaintiff with a means to be heard and "some procedure to defend and make good on his position"); *Bush v. Lucas*, 462 U.S.

367, 388 (1983) (the fact that the available process provides less than complete relief does not mean it should be "augmented" by adding a money damages remedy); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."); *Minneci v. Pollard*, 565 U.S. 118, 125-29 (2012) (an alternative structure—whether judicial or non-judicial—and a "*Bivens* remedy need not be perfectly congruent;" the existence of an alternative process to resolve an issue "constitutes a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages").

**B.** **The Supreme Court's Holding in *Carlson* Does Not Compel the Creation of a Damages Remedy Here.**

Watkins may argue that rather than deferring to Congress on the proper vehicle to address his alleged injury, this court should instead fashion a remedy along the lines of what was done in *Carlson v. Green*, 446 U.S. 14 (1980). *Carlson* is a 42-year-old *Bivens* case that recognized an 8th Amendment claim for failure to provide an inmate with an asthma inhaler among other serious failures, resulting in the inmate's death. *Id.* But *Carlson* is too thin a reed to support recognizing a new constitutional claim in *this* case. For one, *Carlson* "carries little weight" because it predates the Supreme Court's "current approach to implied causes of action and diverges from the prevailing framework." *Egbert*, 142 S. Ct. at 1808. But more importantly, even if the facts of *Carlson* were viewed as parallel to those in the current case, Watkins cannot justify extending the *Bivens* remedy here unless he *also* satisfies the analytic framework prescribed by *Egbert* and the last four decades of intervening case law. *Id.* at 1809. For reasons already set forth herein, he cannot do so.

*Carlson* does not come close to offering a rationale for recognizing a cause of action that would withstand *Egbert* scrutiny. Post-*Egbert*, courts cannot simply assume a *Bivens* claim can

proceed without a special factors analysis — regardless of how similar the claim is to prior *Bivens* cases. *See id.* (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."). Here, there are multiple special factors that distinguish this case from *Carlson*, any *one* which is sufficient to conclude that Congress is better suited to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (quoting *Abbasi*, 137 S.Ct. at 1858). *Carlson* makes no mention of the ARP, which the Bureau of Prisons had only just established mere months before the *Carlson* decision was handed down. *See* 59 Fed. Reg. 50179-01 (noting that the BOP's Administrative Remedy Program was adopted on October 29, 1979). Nor does *Carlson* make any distinction between corrections officers and BOP medical personnel as defendants — it is impossible to tell in reading the opinion which specific *types* of prison employees are subject to liability through an extension of *Bivens*.

*Carlson* grounds much of its reasoning in the perceived shortcomings of the FTCA (*i.e.*, a cause of action under *Bivens* should be recognized because individual liability for prison officials is a more effective deterrent; the FTCA does not allow for punitive damages; the FTCA does not allow for a jury trial; and FTCA liability only exists if the state where the events took place would recognize a tort). *Carlson*, 446 U.S. at 21-23. But again, under the modern approach, those alleged shortcomings simply do not matter. The FTCA is *available*, and that's where the analysis stops. *Egbert*, 142 S. Ct. at 1807 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.").

In addition, the government has internal processes for disciplining employee misconduct and safeguarding the quality of patient care. With respect to medical care specifically, the BOP has also developed policies to "[e]valuate and improve health care delivery systems and clinical

outcomes," Federal Bureau of Prisons, *Health Services Quality Improvement* (Jan. 15, 2005), https://www.bop.gov/policy/progstat/6013_001.pdf, and "establish procedures for primary source credential verification, and granting of clinical privileges or practice agreements for health care providers at Bureau institutions," *Health Care Provider Credential Verification, Privileges, and Practice Agreement Program* (Oct. 12, 2016), https://www.bop.gov/policy/progstat/6027_002. pdf. In light of the many processes protecting inmates' interest in adequate medical care, authorizing a *Bivens* remedy would be unwarranted.

Looking to the actual facts of the case, Watkins's allegations and the facts in *Carlson* bear little relation to one another. First, Watkins's case implicates both his 14th Amendment due process rights as a pretrial detainee and his 8th Amendment rights to be free from cruel and unusual punishment as a post-judgment prisoner. *Carlson* dealt only with the 8th Amendment. Second, *Carlson* was a survivorship case, brought by an inmate's family after the alleged constitutionally inadequate treatment had killed the decedent. Here, Watkins is still a federal inmate and alleges that his injury had stopped by the time he left the MCC. Thus, unlike a deceased inmate, Watkins is fully capable of pursuing alternative remedies in the aftermath of his alleged injury. Third, Watkins alleges liability for Dr. Mohan in part on the doctor's supervisory role as clinical director at the MCC, such that he is liable for any acts or omissions of people working under him — a form of *respondeat superior* liability that has never been recognized by the Supreme Court in the *Bivens* context. *See* Am. Compl. at ¶ 7 ("In his capacity as Clinical Director, Dr. Mohan administers medical care to inmates at MCC and is responsible for medical care and treatment to detainees and/or inmates at MCC."). Fourth, Watkins alleges in part that Dr. Mohan should be held liable for having "cleared" Watkins for release from the MCC, despite Watkins's medical condition. *Id.* at ¶ 66. No such allegation was ever made in *Carlson*. And indeed, allowing such a claim to go

forward would substantially intrude on the BOP's ability to administer its facilities and move inmates — a disruptive intrusion by the judiciary which itself is a special factor counseling hesitation in recognizing a cause of action. *Abbasi*, 137 S. Ct. at 1860.

Ultimately, Watkins is not without recourse when it comes to pursuing remediation for his claims of alleged mistreatment. But *individual liability* for particular federal prison employees is not a remedy that Congress has established. This court must pause and ask whether the judiciary is "better equipped" to play that role and step into Congress's shoes to create that remedy itself. *Egbert*, 142 S. Ct. at 1804. Because the answer to that question is, "no," Watkins's *Bivens* claims should be dismissed.

## Conclusion

For all these reasons, the court should dismiss plaintiff's second amended complaint in its entirety.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Nigel B. Cooney
    NIGEL B. COONEY
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1996
    nigel.cooney@usdoj.gov