IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JORDAN WATKINS,

    Plaintiff,

        v.

UNITED STATES OF AMERICA,
DR. BRIJ MOHAN, Jane Does and
John Does,

    Defendants.

No. 21-cv-02045
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jordan Watkins (Watkins), while a federal pretrial detainee at the Metropolitan Correctional Center Chicago (MCC), underwent a hernia repair surgery. Following the surgery, Watkins complained to MCC correctional officers and Clinical Director Dr. Brij Mohan (Dr. Mohan) about groin pain, to no avail. Watkins filed suit against Dr. Mohan and unidentified MCC medical and corrections personnel under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), for negligent medical treatment, along with claims pursuant to *Bivens v. Six Unknown Named Agent of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971) under the Eighth and Fourteenth Amendments for denial of proper medical treatment and deliberate indifference to his serious medical condition. R.[1] 1; R. 22, SAC. Defendants moved to dismiss Watkins's second amended complaint pursuant to Federal Rule of Civil Procedure

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

12(b)(6). R. 27, Mot. Dismiss. For the reasons that follow, Defendants' motion is granted.

## Background[2]

Watkins is a prisoner at FCI Gilmer in West Virginia, a correctional facility operated by the Federal Bureau of Prisons (BOP). SAC ¶ 5. Watkins was previously incarcerated at MCC, where he was detained as a pre-trial detainee from October 2018 to July 18, 2019, and as a prisoner from July 18, 2019 to July 29, 2019. *Id.* On March 29, 2019, Watkins was evaluated by MCC's medical staff and diagnosed with a hernia. *Id.* ¶ 21. Dr. Mohan is MCC's Clinical Director and was ultimately responsible for Watkins's medical treatment during the time he was detained at MCC. *Id.* ¶¶ 6–7, 47. As Clinical Director, Dr. Mohan supervises the medical and nursing staff at MCC and administers care to inmates. *Id.* ¶¶ 6–7. On June 12, 2019, Watkins underwent surgery at Thorek Memorial Hospital to repair the hernia. *Id.* ¶ 23.

Upon returning to MCC, Watkins began complaining of severe pain and swelling in his groin, with his testicles "sw[elling] to the size of a grapefruit." SAC ¶¶ 24, 33. His pain and swelling became so severe that he had trouble sitting and sleeping. *Id.* ¶¶ 45, 59, 73. On June 15, 2019, Watkins informed the medical staff at MCC of this pain and swelling, but the complaints were dismissed as "benign side effect[s] of the hernia repair surgery." *Id.* ¶¶ 25–26. To address his complaints, Wakins was given medication, which did not treat nor alleviate his injuries. *Id.* ¶ 27.

---

[2]The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in favor of Watkins. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

No additional treatment was provided. *Id.* ¶ 28. Between June 15, 2019 until his transfer on July 29, 2019, Watkins continued to complain to MCC medical staff about his pain. *Id.* ¶ 30. Watkins eventually underwent surgery to address his symptoms in February 2020, after he was transferred to USP Leavenworth. *Id.* ¶ 33.

At USP Leavenworth, Watkins submitted a Request for Administrative Remedy to the Department of Justice, dated November 22, 2019, complaining about his inadequate medical treatment. SAC ¶ 34. His request was received a week later. *Id.* ¶ 35. On December 9, 2019, the BOP denied Watkins's Request for Administrative Remedy. *Id.* ¶ 37. In January 2020, Watkins appealed the final denial of his Request for Administrative Remedy, which was received by the BOP. *Id.* ¶¶ 38–39. The BOP issued a Final Denial of Watkins's Claim on July 20, 2020. R. 28, Memo. Dismiss at 3 (citing R. 28-1, Exh. 1 at 3)[3]; R. 33, Resp. at 3.

Watkins filed suit in federal court on August 7, 2020, *Watkins v. Mohan*, No. 20-cv-4662 (N.D. Ill.) (*Watkins I*), eighteen days after his final denial. SAC ¶ 41. His first three applications to proceed *in forma pauperis* were denied, and on November 2, 2020, Watkins was given a December 4, 2020 deadline to submit his fourth application. *Watkins I*, Dkt. No. 10. Watkins did not submit his fourth application or pay the requisite filing fee, and on December 21, 2020, the court dismissed his complaint without prejudice for failure to comply with a court order. *Id.* Dkt. No. 11.

---

[3]Watkins's second amended complaint alleges that he "exhausted his administrative remedies prior to this lawsuit," SAC ¶ 40, but does not specify when the BOP dismissed his appeal. However, Defendants attached the BOP's Final Denial of Claim letter dated July 20, 2020 and the Court may take judicial notice of matters of public record, including administrative documents submitted or issued as part of an administrative review by the BOP. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

On April 15, 2021, Watkins filed this suit *pro se,* asserting essentially the same claims as in *Watkins I.*[4] R. 1. On May 28, 2021, the Court granted Watkins's motion for attorney representation. R. 5. On April 8, 2022, Watkins filed his second amended complaint, which is the operative complaint in which Watkins asserts claims against Dr. Mohan and Defendants Jane Does and John Does under the FTCA (Count I) and claims pursuant to *Bivens v. Six Unknown Named Agent of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971) under the Eighth and Fourteenth Amendment (Counts II through V).[5] R. 22. Defendants' fully briefed motion to dismiss is before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[4]This lawsuit was originally assigned to the same judge assigned to *Watkins I*. It was reassigned to this Court on October 11, 2022. R. 35.

[5]Although the second amended complaint lists the *Bivens* counts as "42 U.S.C. § 1983 (Bivens Claim)," the correct vehicle for this action is a *Bivens* claim, not § 1983. *Bivens* claims are appropriate against federal officials, whereas 42 U.S.C. § 1983 is limited to state actors. *See infra* Section II (providing further explanation about *Bivens* claims).

defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.     Federal Tort Claims Act – Negligence (28 U.S.C. § 1346(b))

In Count I, Watkins asserts a negligence claim against Defendants under the FTCA. "The FTCA constitutes a limited waiver of the United States' sovereign immunity and allows individuals to bring an action for damages against the federal government for 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Arroyo v. United States*, 656 F.3d 663, 667 (7th Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)). The statute of limitations for FTCA claims—which Defendants assert bars this action—is contained in 28 U.S.C. § 2401(b) and provides that: "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless [the] action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Thus, the FTCA presents two separate timing requirements: first, the plaintiff must present his or her administrative claim to the appropriate Federal agency within two years of the claim accruing, and second, if the

5

claim is denied by the agency, the plaintiff must file suit within six months of the notice of final denial. 28 U.S.C. § 2401(b).

Defendants argue that Watkins's FTCA claim is barred by the FTCA's statute of limitations. Memo. Dismiss at 4. Defendants concede that Watkins satisfied the first timing requirement, as he presented his administrative claim to the BOP in October 2019, less than two years after the date of his injuries, which he alleges took place between June 2019 and August 2019. *Id.* at 5. However, Watkins fails on the second requirement, contend Defendants, because Watkins did not file suit within six months following the BOP's final denial of his claim on July 20, 2020. *Id.* Instead, Watkins filed this complaint eight months and 26 days after the administrative claim denial. *Id.* Courts, submit Defendants, regularly dismiss FTCA suits where plaintiffs fail to comply with the FTCA's statute of limitations. *Id.* (citing, among other cases, *Ransom v. United States*, 668 Fed. App'x 169, 171 (7th Cir. 2016); *Pekin Ins. Co. v. United States*, 2020 WL 207748 (N.D. Ill. Jan. 14, 2020)). Watkins's first suit, *Watkins I*, posit Defendants, does not create a new six-month filing window. *Id.* at 5–6 (citing, among other cases, *McNeil v. United States*, 964 F.2d 967, 648–49 (7th Cir. 1992); *Luckett v. Rent-A-Center, Inc.*, 53 F.3d 871, 872–73 (7th Cir. 1995)). Defendants included a chart delineating the relevant timeline in reply:

6

| Date | Event |
|------|-------|
| July 20, 2020 | FTCA Administrative claim denied. |
| Aug. 7, 2020 | Watkins files his first suit, 20 C 4662 [*Watkins I*]. |
| Dec. 21, 2020 | [*Watkins I*] is dismissed for failure to comply with court's IFP order. |
| Jan. 11, 2021 | Watkins enters quarantine. |
| Jan. 20, 2021 | Six-month period for filing suit lapses. |
| Feb. 3, 2021 | Watkins leaves quarantine (23 days). |
| March 3, 2021 – March 16, 2021 | Watkins was in quarantine for 13 days. |
| April 15, 2021 | Watkins files current suit. |

Reply at 2.

In response, Watkins concedes that he filed this suit more than six months after the BOP's denial of his administrative claim. Resp. at 4. However, argues Watkins, the statute of limitations should be equitably tolled due to the circumstances surrounding the dismissal of his first suit and the refiling of this suit. *Id.* To start, Watkins maintains that he was unaware of the court order denying his application to proceed *in forma pauperis* until after his first lawsuit was dismissed on December 21, 2020, due to disruptions caused by COVID-19 that affected the BOP and the United States Postal Service. Resp. at 5–6. On April 15, 2021, Watkins filed this suit. R. 1. In the months between the dismissal of *Watkins I* in December 2020 and the filing of this suit in April of 2021, Watkins was quarantined twice for suspected and confirmed cases of COVID-19.[6] Resp. at 6–7. One period of isolation was from January 11, 2021 to February 3, 2021, and the other was from March 3, 2021 to March 16, 2021. *Id.* at 6–7. During these periods, Watkins alleges he was

---

[6]In his response, Watkins submits, among other records, his medical records from FCI Gilmer.

unable to access "his personal papers, phones, computers, or incoming or outgoing mail." *Id.* at 7. Watkins insists that these circumstances are extraordinary and justify application of equitable tolling.

Not so, argue Defendants, as Watkins, the party seeking equitable tolling must, but fails to establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." R. 34, Reply at 3 (quoting *Pace v. DiGuglielmo*, 554 U.S. 408, 418 (2005)). Although Watkins diligently pursued his *first* suit, Defendants contend that the same cannot be said for his current filing. *Id.* at 4. First, Defendants point out that Watkins's contention that he was prevented from refiling this suit because he was in quarantine is not supported by affidavit. Reply at 4. Second, Defendants insist that Watkins had ample time after he was out of quarantine to file this suit but instead waited nearly 30 days to do so. Reply at 3. Turning to the second element, Defendants posit that "because he was only quarantined for a total of 36 days, Watkins cannot establish that COVID-19 quarantine was an extraordinary circumstance," that prevented him for timely filing this suit. *Id.* at 3–4.

It is undisputed that the FTCA's time limits are subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015). As stated above, a litigant seeking to invoke equitable tolling bears the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418; *Molina-Garcia v. Fardon*, 754 F. App'x 475, 477 (7th Cir. 2019). The Seventh Circuit has described equitable tolling as an "extraordinary

remedy that is rarely granted." *Carpenter v. Douma*, 840 F.3d 867, 870 (citing *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir, 2013)) (cleaned up)[7]; *see also Conner v. Reagle*, 82 F.4th 542, 550 (7th Cir. 2023). Only where petitioner can satisfy both elements can the doctrine be applied. *Carpenter*, 840 F.3d at 870.

For the first element, "the diligence required for equitable tolling purposes is reasonable diligence not maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010) (cleaned up). Thus, to qualify for equitable tolling, Watkins must demonstrate he was reasonably diligent in pursuing his rights throughout the limitations period and until he filed his untimely complaint on April 15, 2021. It can hardly be disputed that COVID-19 and the government's response to this once-in-a-lifetime pandemic disrupted society. The question is whether Watkins exercised reasonable diligence in pursing his rights.

As an initial matter, there is no question that *Watkins I* was filed within the statute of limitations, as Watkins filed it just 18 days after the BOP denied his administrative claim. *See* Resp. at 6 (citing *Watkins I*); Memo. Dismiss at 5. As stated above, Watkins alleges he did not receive the November 2, 2020 order denying his first three *in forma pauperis* applications and requiring him to file a fourth application until after *Watkins I* was dismissed on December 21, 2020. Resp. at 6. Watkins posits that, because he received the November 2, 2020 order after the dismissal of *Watkins I*, he "was unable to respond in a timely manner." *Id.* Taking

---

[7]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

that allegation as true, Watkins still does not explain how his inability to timely comply with a court order in *Watkins I* impacts the equitable tolling analysis for this suit. To be sure, such information might well have been important to a motion for reconsideration or an appeal of the dismissal order in *Watkins I*, but as Defendants point out in reply, Watkins filed neither. Reply at 5. Still, the date Watkins learned of the dismissal of *Watkins I* could be relevant to the equitable tolling analysis before the Court, as it would inform when Watkins needed to exercise reasonable diligence in filing the current lawsuit; put another way, if Watkins did not learn of the dismissal of *Watkins I* until after the statute of limitations ran on January 20, 2021, equitable tolling may well apply until the date Watkins did learn of the dismissal (or shortly thereafter). Watkins does not specify when he learned that *Watkins I* had been dismissed, however, and he neither argues nor presents evidence that he did not receive notice of the dismissal until after January 20, 2021, much less until on or about April 15, 2021, the date he filed the instant lawsuit. *See* Resp.

Watkins focuses his equitable tolling arguments on his periods in quarantine between the dismissal of *Watkins I* and the filing of this lawsuit. Resp. at 5–7. Putting aside the lack of an affidavit and accepting as true Watkins's allegations as to his time in quarantine due to COVID-19 and his inability to access his papers and or mail while in quarantine, the Court finds that Watkins still falls short of establishing reasonable diligence. Clearly, there are instances where Watkins was unable to effectively pursue his rights. Specifically, within the limitations period and following the limitations period lapsing on January 20, 2021, Watkins was placed in extended

periods of COVID-19 isolation—from January 11, 2021 to February 3, 2021 and March 3, 2021 to March 16, 2021. During these periods, without access to his documents, mail, phones, or a computer, it was nearly impossible for Watkins to pursue his claims with reasonable diligence (another way of looking at it is, during those periods, extraordinary circumstances stood in his way of filing a new lawsuit).

However, there were periods after the limitation period lapsed where Watkins was not in COVID-19 isolation but did not file this lawsuit. Specifically, from February 3, 2021 to March 2, 2021, Watkins, by his own admission was not in quarantine. Yet, he did not file this suit during this time period. True, he returned to quarantine from March 3, 2021 to March 16, 2021, but Watkins waited almost a month after leaving quarantine on Mach 16, 2021 before he filed this suit. The question that arises once "an obstacle that prevents filing a suit is removed" is whether the "litigant . . . sue[d] within a reasonable time." *Brown v. Unknown Party*, 2023 WL 2818004, at *1 (7th Cir. 2023) (cleaned up); *see Cada v. Baxter Healthcare*, 920 F.2d 446, 452–53 (7th Cir. 1990). Watkins fails to provide any justification for the delay in his filing during these two separate periods when he was not in isolation, and instead argues in conclusory fashion that "[he] diligently pursued his rights and has faced extraordinary circumstances out of his control that resulted in the delay in refiling." Resp. at 7. "[M]ere conclusory allegations of diligence are insufficient and reasonable efforts throughout the limitations period is required." *Marberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (citing *Carpenter*, 840 F.3d at 870).

11

And to the extent that Watkins takes the position that COVID-19 disrupted his ability to prepare or file this lawsuit in the two nearly month-long periods during which he was incarcerated but not in quarantine, such a contention, without more from Watkins, is unavailing. Courts have found that "limitations caused by the COVID-19 pandemic" in prisons, including restrictions to accessing the law library and access to papers, do not constitute "extraordinary circumstances, beyond [his] control, that prevent[ed] timely filing." *Wilson v. Williams*, 2023 WL 6929576, at *7 (N.D. Ill. Oct. 19, 2023) (cleaned up). This is especially true here, where Watkins's instant lawsuit brings substantially the same claims as those included in *Watkins I*, and Watkins has proffered no allegations nor evidence that he did not have access to his papers, the law library, or the mail (apart from alleging mail delays) while he was out of quarantine between February 3, 2021 to March 2, 2021 and March 16, 2021 to April 15, 2021. *See id.* (citing, among other cases, *United States v. Reeves*, 2022 WL 17832713, at *7 (N.D. Ill. Dec. 21, 2022) (petitioner not entitled to equitable tolling due to prison disruptions caused by COVID-19 pandemic, where he did "not explain with any specificity how the disruptions caused by the pandemic interfered with his ability to communicate with [his attorney] or pursue his claims"); *United States v. Jones*, 2021 WL 3033392, at *2 (N.D. Ill. July 19, 2021) (habeas petitioner failed to show that equitable tolling was appropriate due to prison COVID-19 procedures, where petitioner "provided no information describing exactly how the lockdowns and his placement in the [segregated housing unit] actually affected his ability to file his motion on time")).

12

Regrettably, based on the record before it, the Court finds that Watkins has failed to meet his burden of establishing that he is entitled to the extraordinary remedy of equitable tolling, as he fails to show that he pursued his rights diligently and that some extraordinary circumstance stood in his way of timely filing his second lawsuit.[8] Accordingly, Watkins's FTCA claim is dismissed as untimely.

## II. *Bivens* Claims Against Corrections and Medical Defendants Under the Eighth and Fourteenth Amendments

The Court next addresses Watkins's *Bivens* claims. Watkins alleges that Defendants[9] violated his Eighth Amendment and Fourteenth Amendment rights. To properly contextualize the nature of a *Bivens* claim, a brief overview of the Supreme Court's jurisprudence on the topic is in order.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court recognized for the first time an implied right of action for an individual whose Fourth Amendment right of freedom from unreasonable search and seizure was violated by the Federal Bureau of Narcotics. *Id*. at 390. There, federal agents entered Bivens's home and arrested him without a warrant. *Id*. at 389. The agents conducted the search in front of Bivens's family and

---

[8]The Court reiterates that this finding should not be interpreted to mean that Watkins necessarily must have filed the instant suit before he left quarantine the first time on February 3, 2021, as the limitations period lapsed during his period of quarantine; however, the Court finds equitable tolling is inappropriate for the period between February 3, 2021 and April 15, 2021, during which Watkins was out of quarantine for nearly two months.

[9]The Court notes that Watkins has asserted *Bivens* claims against fictious John and Jane Does defendants. Defendants state that the motion to dismiss is not brought on behalf of any fictious defendants and that any future amendment that might name actual defendants would not relate back to an earlier filed complaint. Memo. Dismiss at 6, n.4 (citing *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021)). The Court, however, need not decide the issue.

threatened to arrest his wife and children. *Id.* The Court held that Bivens could sue for damages for the Fourth Amendment violation despite the lack of any federal statute authorizing such a suit. *Id.* at 397. The Supreme Court subsequently extended *Bivens* in "two additional contexts: a claim against a member of Congress under the Fifth Amendment for workplace discrimination, *Davis v. Passman*, 442 U.S. 228 (1979), and a claim against federal prison officials under the Eighth Amendment for failure to provide adequate medical care, *Carlson v. Green*, 446 U.S. 14 (1980)." *Snowden v. Henning,* 72 F. 4th 237, 238–39 (7th Cir. 2023).

Over the years, however, *Bivens* claims have come to be viewed skeptically by the Supreme Court. *Bivens* was decided during what the Supreme Court has described as an "*ancien regime* [during which] the Court assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose." *Ziglar v. Abbasi*, 582 U.S. 120, 131–32 (2017) (cleaned up). In fact, the Court recently stated that if it were "called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 502 (2022). This shift is premised on the principle that "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Abbasi*, 582 U.S. at 135–36 (cleaned up). Today, "a cause of action under *Bivens* is a disfavored judicial activity" for which the "watchword is caution." *Egbert*, 596 U.S. at 491 (cleaned up).

14

To determine whether a *Bivens* remedy is available, courts must engage in a two-step inquiry. *Egbert*, 596 U.S. at 492. First, a court asks if the claim "presents a new *Bivens* context," meaning that the case is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (cleaned up). "If the context is not new, then the claim may proceed." *Snowden,* 72 F. 4th at 239. A non-exhaustive list of meaningful differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. 120 at 139–40.

If the context is new, the court must then determine if it is appropriate to imply a new private right of action to that claim. *Snowden,* 72 F. 4th at 239. In *Abbasi*, the Supreme Court reiterated that a *Bivens* remedy "will not be available if there are 'special factors' counselling hesitation in the absence of affirmative action by Congress." *Id*. at 136 (cleaned up). The "special factors" inquiry, explained the Court, "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case, no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92 (cleaned up). Among

those factors courts may consider is whether alternative remedies exist for addressing the constitutional violations raised by the claims of a particular case. That is, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 582 U.S. at 137. "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (cleaned up).

Recently, the two-step process for evaluating requests to imply new constitutional causes of action has been called into question. *Sargeant v. Barfield*, 2023 WL 8224194, at *4, --- F.4th---- (7th Cir. 2023). In *Egbert*, the Supreme Court explained that, "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. "This is because the final two step-one considerations—the risk of disrupting other branches and the presence of special factors that prior cases did not consider—are similar to the second step." *Sargeant*, 2023 WL 8224194, at *4.

It is within this framework that the Court analyzes whether Watkins may assert *Bivens* claims under the Eighth and Fourteenth Amendments.

Watkins alleges that Defendants violated his Eighth and Fourteenth Amendment rights when they were deliberately indifferent to his serious medical condition.[10] SAC ¶¶ 56–104. Defendants contend that Watkins cannot maintain these

---

[10]Watkins's Eighth Amendment claims relate to the time that he was a prisoner at MCC between July 18, 2019 and July 29, 2019, whereas his Fourteenth Amendment claims relate to the time that he was a pretrial detainee at MCC from October 22, 2018 to July 18, 2019.

claims because Congress, and not the courts, is the proper entity with the power to create a cause of action under these circumstances. Memo. Dismiss at 6. In fact, argue Defendants, Congress has already created multiple alternative remedial structures that "address precisely the kinds of injuries alleged in Watkins's complaint. *Id.* at 8. These include: (1) the BOP's Administrative Remedy Program (ARP), which Watkins availed himself of in this case by submitting a request for administrative remedy and appealing it through all appropriate channels before filing suit; and (2) the FTCA, which provides an avenue for some redress.  *Id.* at 8–9. Here, argue Defendants, Watkins potentially had both remedies available to him. *Id.* at 9. Defendants posit that any argument that this Court should instead fashion a remedy like the Supreme Court did in *Carlson*, 446 U.S. 14 carries little weight because *Carlson* predates the Supreme Court's new approach to implied causes of action. *Id.* at 10–12. In any event, argue Defendants, *Carlson* is distinguishable from this case. *Id.*

Predictably, Watkins disagrees. Watkins argues that his *Bivens* claims fit within the context of *Carlson* and therefore do not arise under a new context. Resp. at 8–9. In rather cursory fashion, Watkins insists that the facts of his case are materially indistinguishable from those in *Carlson*, as "[Watkins] is a federal inmate alleging federal prison officials acted with deliberate indifference to Plaintiff's

---

SAC ¶¶ 57, 70, 84, 95. Fourteenth Amendment medical-care claims brought by pretrial detainees are subject only to the objective unreasonableness inquiry, whereas Eighth Amendment medical-care claims brought by convicted prisoners are subject to the subjective deliberate indifference standard. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The parties do not distinguish between Watkins's Eighth and Fourteenth Amendment claims for purposes of the *Bivens* inquiry, and the Court finds that the analysis is the same for both, so it analyzes them together.

medical care in violation of the Eighth Amendment." *Id.* at 8. Because his claims do not arise under a new context, Watkins concludes that his claims are entirely consistent with *Bivens*. *Id.* In addition, Watkins argues, again relying on *Carlson*, there are no special factors counselling hesitation in allowing his cause of action to proceed. *Id.* at 8–9.

Defendants reply that *Carlson* is not only distinguishable from this case but also, given the Supreme Court's modern approach to *Bivens* claims, carries little weight. Reply at 5–6. The Court agrees.

In *Carlson*, prison officials allegedly, knowing of the seriousness of an inmate's chronic asthma, kept the inmate in an inadequate medical facility against doctors' advice, failed to give him competent medical care for about eight hours after his first asthma attack, administered contra-indicated drugs, attempted to use an inoperative respirator, and delayed his transfer to an outside hospital. 446 U.S. at 16 n.1. The inmate allegedly died as a result of these acts and omissions. *Id.* The inmate's estate brought suit, alleging that the prison officials violated the decedent's Eighth Amendment rights by giving inadequate medical care. *Id.* at 16. The Supreme Court recognized a *Bivens* cause of action under the circumstances of that case. *Id.* at 25. Applying the two-step test discussed above, the Court first found that the case did not involve any "special factors counselling hesitation in the absence of affirmative action by Congress," concluding that federal prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Id.* at 19. Second, the Court rejected

the notion that Congress's intention was to limit the plaintiff to an FTCA claim. *Id.* at 19–23. The Supreme Court saw FTCA claims as "parallel, complementary causes of action," with *Bivens* claims serving separate and distinct purposes from the FTCA. *Id.* at 20–23.

Defendants argue, and the Court agrees, that there are several differences between this case and *Carlson*, making this a new context. First, Watkins invokes Fourteenth and Eighth Amendment violations, whereas *Carlson* only involved the Eighth Amendment. Memo. Dismiss at 12. But even as to Watkins's Eighth Amendment claims, "the same constitutional amendment does not necessarily mean the same context, [as] 'a claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.'" *Sargeant*, 2023 WL 8224194, at *4 (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)). Second, Watkins, unlike *Carlson*, alleges an ongoing failure to provide medical care, whereas in *Carlson*, the inmate died because he was not provided medial care during an asthmatic episode. Memo. Dismiss at 12–13; Reply at 6. Third, Watkins brings his suit on his own behalf, whereas *Carlson* was a survivorship action brought by the inmate's estate after the allegedly inadequate treatment led to the inmate's death. Memo. Dismiss at 12. Lastly, Watkins brings claims against Dr. Mohan in part based on his supervisory role as the MCC's clinical director, so his liability arises from the acts and omissions of those working under him, whereas *Carlson* involved only direct liability claims. *Id.* Because this case presents a new factual context that is meaningfully different from *Carlson*, the Court

must consider the special factors that counsel hesitation before extending the *Bivens* cause of action to this case. *Egbert*, 596 U.S. at 492.

Here, the Court agrees with Defendants that there are alternative remedies available to Watkins. Specifically, the BOP's ARP, which Watkins availed himself of in this case by submitting a request for administrative remedy and appealing it through all appropriate channels before filing suit. The Supreme Court addressed the existence of the BOP's ARP as a preclusion to *Bivens* claims in *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). In *Malesko*, the Court declined to extend a *Bivens* claim to a federal prison inmate who suffered a heart attack while climbing the stairs of a halfway home, on account of his heart condition that limited his ability to engage in physical activity. 534 U.S. at 64, 74. The Court dismissed the prisoner's *Bivens* claim, concluding that there were "alternative remedies . . . at least as great, and in many respects greater, than anything that could be had under *Bivens*." *Id.* at 72. The prisoner had available parallel tort remedies against the private halfway house and had full access to remedial mechanisms established by the BOP, including the BOP's ARP. *Id.* at 72–74.

The Court in *Egbert* read the decision in *Malesko* to preclude a *Bivens* claim where a federal prisoner could file a grievance through an "Administrative Remedy Program." *Egbert*, 596 U.S. at 497. Watkins does not provide any counterargument to this assertion. *See* Resp. at 8–9. Instead, Watkins claims that his action is consistent with *Abbasi* and *Egbert*'s two-step analysis, focusing solely on the assertion that a FTCA claim does not defeat a *Bivens* claim—as *Carlson* saw the two

20

as "parallel, complementary causes of action." *Id.* (quoting *Carlson*, 446 U.S. at 19–20).

"So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. This is precisely what occurred here. Although it may be clear to Watkins that the BOP's ARP is a woefully inadequate form of remedy compared to a *Bivens* action, the Court is not in a position to impose its own conclusions on the adequacy of available alternative remedies. That determination is best left for Congress or the Executive, and the existence of the BOP's ARP alone provides enough "reason to pause before applying *Bivens* in a new context." *Hernandez*, 140 S. Ct. at 743. Furthermore, courts—including those within the Seventh Circuit—have been consistent in holding that the BOP's ARP is an adequate alternative remedy. *See Silva v. United States*, 45 F.4th 1134, 1141–42 (10th Cir. 2022) ("Plaintiff's *Bivens* claim is foreclosed by the availability of the BOP Administrative Remedy Program to address his complaint."); *Greene v. United States*; 2022 WL 13638916, at *4 (6th Cir. 2022) ("Congress has not created a cause of action for damages against federal corrections officers and officials, [and plaintiff] has an adequate alternate remedy under the BOP grievance system, and implying a cause of action in this context would risk interfering with prison administration.") (cleaned up); *Landis v. Shellhammer*, 2023 WL 6276521, at *5 (N.D. Ill. Sept. 26, 2023) (denying a claim for Eighth Amendment excessive force under *Bivens* where a prisoner could bring a claim under BOP's ARP); *Ajaj v. Fozzard*, 2023

WL 2989654, at *5–6 (S.D. Ill. Apr. 18, 2023) (finding in the wake of *Egbert* that the BOP's ARP forecloses a *Bivens* claim).

Not only that, but Watkins has another means of redress available in the form of the FTCA, which also precludes his *Bivens* action.[11] *See DeBenedetto v. Salas*, 2023 WL 6388127, at *7 (N.D. Ill. Sept. 29, 2023) (collecting cases and finding that the FTCA is a form of alternative relief for a *Bivens* claim); *McNeil v. Duda*, 2023 WL 2587884, at *3–4 (N.D. Ill. Mar. 21, 2023) (finding the existence of statutory grievance procedures, along with FTCA availability, to be alternative remedies precluding a *Bivens* claim); *Gonzalez-Loza v. Cnty. of Kankakee*, 2021 WL 5823512, at *4 (N.D. Ill. Dec. 7, 2021) (FTCA is alternative form of relief for *Bivens* purposes). Although, as Watkins points out, the *Carlson* decision spent considerable time focusing on the reasons why a FTCA claim was inadequate compared to a *Bivens* action, and allowed both claims to proceed, *Carlson*, 446 U.S. at 20–23, that decision came before the more than 40 years of intervening case law that has closely scrutinized the availability of other forms of relief, even if they are seen as imperfect. *C.f. Egbert*, 596 U.S. at 501 ("[A] plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law.") (cleaned up);

---

[11]Defendants do not dispute that Watkins exhausted his administrative remedies as required under the FTCA. *See* SAC ¶¶ 34–40; *see generally* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").

*see also McNeil*, 2023 WL 2587884, at \*4 (rejecting plaintiff's argument that *Carlson*'s holding that the FTCA and *Bivens* provide parallel causes of action supported plaintiff's *Bivens* claim, in light of *Abbasi*'s "holding that the existence of an alternative remedial precludes the extending a *Bivens* claim into a new context").

Under the current *Bivens* doctrine and its "special factors" inquiry, "a court cannot extend *Bivens* to a new context if 'there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed.' Few (if any) new claims will survive this test." *Snowden v. Henning*, 72 F.4th 237, 239 (7th Cir. 2023) (quoting *Egbert*, 596 U.S. at 496) (emphasis in original). Simply put, a *Bivens* extension cannot be based on "parallel circumstances" with *Carlson* unless the "analytic framework prescribed by the last four decades of intervening case law" are satisfied. *See Egbert*, 596 U.S. at 501 (cleaned up).

All in all, because Watkins's claims arise in a new context, and Congress has established alternative remedies that Watkins may pursue to redress any alleged harm, the Court will not extend *Bivens* into this new context and his *Bivens* claims must fail.

## Conclusion

For the foregoing reasons, the Court must grant the motion to dismiss [27] in all respects. Watkins's claims are dismissed with prejudice. *See Blake v. Bradley*, 2022 WL 865843, at \*6 (N.D. Ill. Mar. 23, 2022) (dismissing *Bivens* claim with prejudice); *Watkins v. United States*, 2016 WL 1435704, at \*4 (N.D. Ill. Apr. 12, 2016),

*aff'd*, 854 F.3d 947 (7th Cir. 2017) (dismissing FTCA claim brought beyond the statute of limitations with prejudice). Civil case terminated.

Dated: December 8, 2023

United States District Judge
Franklin U. Valderrama